UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
JOHN Q. GILBERT,

                    Plaintiff,

                                          **MEMORANDUM & ORDER**

          -against-                       12-CV-523 (KAM)(JMA)

NORTH AMERICAN AIRLINES,
MARTIN WAX, LORRAINE DIMARCO,
and ERIC CHANG,

                    Defendants.
----------------------------------X

**MATSUMOTO**, **United States District Judge:**

          On February 3, 2012, John Gilbert ("plaintiff")

commenced this action against North American Airlines

("NAA"); Martin Wax, NAA's Vice President of Technical

Operations; Lorraine Dimarco, NAA's Director of

Maintenance; and Eric Chang, NAA's Director of Human

Resources (collectively, "defendants"), pursuant to the Age

Discrimination and Employment Act ("ADEA"), 29 U.S.C. §

621.  Plaintiff alleges that the defendants engaged in a

pattern of purposeful harassment and discrimination,

resulting in a hostile environment and the discriminatory

termination of plaintiff's employment due to his age.  (*See*

*generally* ECF No. 1, Complaint filed 2/3/12 ("Compl.").)

Defendants now move to dismiss plaintiff's claims pursuant

to Federal Rule of Civil Procedure 12(b)(6).  (*See*

*generally* ECF No. 13, Defendants' Memorandum of Law in

Support of their Motion to Dismiss under Fed. R. Civ. P.

12(b)(6) filed 7/19/13 ("Defs.' Mem.").)  For the reasons

set forth below, defendants' motion to dismiss is granted,

and plaintiff's claim is dismissed in its entirety.

## BACKGROUND

The following facts are taken from the

plaintiff's Complaint, which the court must assume to be

true for the purpose of resolving defendants' Motion to

Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (*See*

*generally* Compl.)  Additionally, where indicated, the

complaint's factual allegations are supplemented by facts

and information drawn from documents external to the

Complaint, upon which plaintiff explicitly relies upon

within the Complaint or are in the purview of judicial

notice.[1]  These external documents have been provided to the

court as attachments to the defendants' motion to dismiss.

---

[1] "[M]atters judicially noticed by the District Court are not
considered matters outside the pleadings." *Staehr v. Hartford
Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008); *Kramer
v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)("[C]ourts
routinely take judicial notice of documents filed in other
courts, again not for the truth of the matters asserted in the
other litigation, but rather to establish the fact of such
litigation and related filings."); *Arista Records, Inc. v. Dalaba
Color Copy Ctr., Inc.*, No. 05-CV-3634, 2007 WL 749737, at *4 n. 1
(E.D.N.Y. Mar. 7, 2007).  The court may consider additional
documents, at the motion to dismiss stage, along with the
complaint, when the court determines the documents are integral
to the complaint. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)
(internal citation and quotation omitted).

(*See generally* ECF No. 13, Defs.' Mem.; *see also* ECF No. 16, Certification of Ivan R. Novich in support of Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) filed 7/22/13 ("Novich. Cert."); ECF No. 14, Defendants' Reply Memorandum filed 7/19/13 ("Defs.' Reply").)

## I. Parties

Plaintiff is a former Manager of Maintenance Control at NAA. (Compl. ¶ 10.) Plaintiff previously worked for Pan American Airlines for 24 years as a technician, controller, and relief duty manager in the technical operations center. (*Id.* ¶ 40.) Thereafter, in August 2005, after thirteen years, plaintiff retired from his position at Northwest Airlines and subsequently began working at NAA. (*Id.* ¶¶ 8, 38.) Throughout his career, plaintiff developed managerial expertise, overseeing aircraft maintenance operations at Newark Airport and Philadelphia Airport. (*Id.* ¶ 11.)

Defendant NAA is a corporation duly incorporated in the State of New York and does regular business at John F. Kennedy Airport. (*Id.* ¶ 4.) At all relevant times, Martin Wax, Lorraine DiMarco, and Eric Chang were managerial employees of NAA and acted under the direction, policies, practices, and customs of NAA. (*Id.* ¶¶ 5-7.)

## II. Complaint Allegations

Plaintiff became Manager of Maintenance Control at NAA sometime after August 2005, after he left his position at Northwest Airlines. (*Id.* ¶¶ 8-10.) The Director of Maintenance at NAA, Michael Jacoby, recruited him for the position. (*Id.* ¶ 10.)

While at NAA, plaintiff was responsible for providing technical oversight for aircrafts at both foreign and domestic stations. (*Id.* ¶ 12-13.) His role also involved overseeing both maintenance controllers and flight technicians. (*Id.* ¶¶ 12-13.) During his time as Manager of Maintenance Control, plaintiff alleges NAA showed a concerted effort to undermine his efforts to manage the Maintenance Controls Operation. (*Id.* ¶ 36.) This included giving some of plaintiff's job responsibilities to other managers at NAA. (*Id.* ¶ 26.) Plaintiff alleges that under his leadership, he helped improve his department at NAA. (*Id.* ¶ 15.) Specifically, plaintiff assisted the maintenance control operations department in passing two internal audits conducted by the Department of Defense. (*Id.* ¶ 15.) Plaintiff alleges that despite his successes and experience, the defendants rejected his ideas about how to improve the airline. (*Id.* ¶ 17.)

Plaintiff ultimately began to complain to the

defendants about their discussions regarding his suggestions for improving operations, and alleges this is when defendants' retaliation and harassment began. (*Id.* ¶ 20.) Sometime in 2007, plaintiff contends defendant Martin Wax yelled at plaintiff for not giving an employee a low job performance rating. (*Id.* ¶¶ 21-22.) Sometime thereafter, plaintiff applied for the position of Senior Manager of Maintenance Control, only to receive a disciplinary Performance Improvement Plan letter instead. (*Id.* ¶ 25.) He alleges this letter was written to provide a reason for plaintiff's job application rejection. (*Id.* ¶ 25.) Plaintiff then received a memo from upper management notifying him that management was relocating him to the engineering department on August 1, 2011, and that plaintiff had to assume the position of "manager engineering troubleshooters," a position the defendants never posted. (*Id.* ¶ 35.) Plaintiff alleges he was unjustifiably removed "without due process" from his position of Manager of Maintenance Control, a position that was being eliminated, and was told his newly acquired position would "be a better fit for his talents," although it would be easier for the defendants to terminate him without cause or difficulty from the new position of "manager engineering troubleshooters." (*Id.* ¶¶ 34-35.)

Additionally, plaintiff contends that he was undermined, harassed, and retaliated against and that hiring a less experienced candidate for Manager of Maintenance Control would be less expensive for the defendants because he "is now at retirement age." (*Id.* ¶ 36.)

On February 3, 2012, plaintiff filed the instant action, alleging that defendants violated the ADEA, 29 U.S.C. § 621. (*See generally* Compl.) Specifically, plaintiff alleges that defendants "creat[ed] a course of harassment and a hostile work environment based on his age." (*Id.* ¶ 43.)[2]

## III. NAA's Bankruptcy & Bankruptcy Restructuring Agreement

On February 5, 2012, Global Aviation Holdings, Inc. ("Debtors"), NAA's parent company, filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of New York ("the Bankruptcy Court"), identifying NAA as a debtor. (ECF No. 16, Novich Cert. filed 7/22/13, Ex. 2.) On February 14, 2012, defendants served plaintiff, through his attorney Andrew Schatkin, Esq., with notice of NAA's bankruptcy. (*Id.*, Ex.

---

[2] Under the ADEA, the protected class includes individuals who are at least 40 years of age. 29 U.S.C. § 631(a). Plaintiff does not allege his age or that he fell within the protected class during the relevant events. However, plaintiff's work history consists of 13 years with Northwest Airlines, 4 years with Pan American Airlines, and 6 years with NAA, amounting to 43 years of work experience. (*Id.* ¶ 40.)

3.)  On June 15, 2012, the Bankruptcy Court ordered a July

30, 2012 cutoff date (the "Bar Date") for potential

claimants to assert their claims against the debtors that

arose prior to the debtors' filing of their Chapter 11

petitions on February 5, 2012.  (*Id.*, Ex. 4, at 1.)  The

Bankruptcy Court articulated the following "consequences of

failure to file a proof of claim by the bar date":

> Any holder of a claim that is not
> excepted from the requirements of this
> order. . . and that fails to timely
> file a proof of claim in the
> appropriate form, will be barred from
> asserting its claim against the debtors
> and their chapter 11 estate, voting on
> any plan of reorganization filed in
> this case, and participating in any
> distribution in the debtors' chapter 11
> case on account of that claim.

(*Id.*, Ex. 4, Ex. 1, at 6.)

Additionally, the Bankruptcy Court ordered this

Bar Date to apply to "all types of claims against the

Debtors that arose prior to the Bankruptcy Filing,

including secured claims, unsecured priority claims . . .

and unsecured nonpriority claims," and provided

instructions on how to file a proof of claim[3] in Bankruptcy

Court.  (*Id.*, Ex. 4, at 1-2.)  The Order also directed the

---

[3] "A proof of claim is a written statement setting forth a
creditor's claim."  Fed. R. Bankr. P. 3001.

Debtors to serve notice on all creditors and other known claim holders listed in the schedules, and to publish notice of the Bar Date in the New York Times twenty-eight days prior to the Bar Date. (*Id.*, Ex. 4, at 5-6.) The notice was published on October 23, 2012 in the New York Times. (*Id.*, Ex. 4, at 6; Bankr. Docket No. 12-40783, ECF. No. 692, Confirmation of the Joint Plan of Reorganization of Global Aviation Holdings and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code filed 10/24/12 ("Not. of Pub.").)[4]

On December 10, 2012, pursuant to Chapter 11 of the Bankruptcy Code, the Bankruptcy Court issued an order confirming the debtors' First Amended Joint Plan of Reorganization of Global Aviation Holdings Inc., and its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code ("the Reorganization Plan"). (ECF No. 16, Novich Cert. filed 7/22/13, Ex. 5.) The Reorganization Plan

---

[4] Defendants filed "Schedules of Assets and Liabilities for Global Aviation Holdings Inc." on March 21, 2012, providing the Bankruptcy Court with a summary of its secured and unsecured creditors. (Bankr. Docket No. 12-40783, ECF No. 257, Schedules of Assets and Liabilities for Global Aviation Holdings Inc. filed 3/21/12.) Plaintiff was not listed in this schedule. (*Id.*) However, in addition to providing notice by publication, defendants sent notice of their Chapter 11 bankruptcy on February 13, 2012 to plaintiff and his counsel. (Bankr. Docket No. 12-40783, ECF. No. 87, Supplemental Affidavit of Service of "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines" filed 2/14/12.) Plaintiff did not file a claim.

provides for the discharge and release of all "Claims"[5]

against NAA under its "Discharge of Claims and Termination

of Interests" clause:

> Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument or other agreement or document created pursuant to the Plan, the distributions, rights, and treatments that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date . . . .

(*Id.*, Ex. 5, at Exhibit A, p. 42 ¶ F.) The foregoing

provision concludes that "the Confirmation Order shall be a

judicial determination of the discharge of all Claims and

Interests subject to the Effective Date." (*Id.*, Ex. 5 at

Ex. A, First Amended Joint Plan of Reorganization

("Reorganization Plan"), at 42 ¶ F.)

The Reorganization Plan and Confirmation Order

discharge all claims against NAA's parent company Global

Aviation Holdings Inc., with a broad injunction against the

assertion of discharged claims, permanently enjoining "all

entities who have held, hold, or may hold Claims or

---

[5] "Claims" are defined in the Plan as having the meaning set forth in Section 101(5) of the Bankruptcy Code, which defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A)(2006); (ECF No. 16, Reorganization Plan at ¶ 21).

Interests," from and after the effective date, from, *inter alia*, "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests." (Reorganization Plan at 42-43 ¶ G.) On February 13, 2013, the Bankruptcy Court issued notice of the effective date for the Reorganization Plan, in which the court stated "the Plan and its provisions are binding on . . . any holder of a Claim against, or Interest in, the Debtors." (Bankr. Docket No. 12-40783, ECF No. 915, Notice of Occurrence of the Effective Date of the First Amended Joint Plan of Reorganization filed 2/13/13 ("Not. Of Eff.").)

On June 5, 2013, defendants served plaintiff with the instant motion to dismiss. (*See generally* ECF No. 15, Notice of Mot. to Dismiss dated 6/5/13; Defs.' Mem.) Plaintiff opposed the motion. (ECF No. 12, Plaintiff's Opposition dated 7/5/13 ("Pl.'s Opp.").) Defendants subsequently filed a Reply Memorandum of Law in further support of their Motion to Dismiss under Fed. R. Civ. P. 12(b) (ECF No. 14, Defs.' Reply.)

Plaintiff argues his claim should proceed, despite the defendants' Reorganization Plan, Confirmation and Effective Date. (Pl.'s Opp. at 14.) Specifically, plaintiff asks this court to disregard the notice he

received of the NAA's bankruptcy proceeding for two
reasons. (*Id.* at 13.) First, plaintiff claims he "did not
understand any notice that was sent to him and that it
involved his claim." (*Id.*) Second, plaintiff's attorney
allegedly has no recollection of any notice from the
Bankruptcy Court arriving at his office. (*Id.*) In short,
plaintiff maintains "that if any notice was provided to
him, either he did not receive it or did not understand
it." (*Id.* at 14.)

## LEGAL STANDARDS

### I. Rule 12(b)(6), Rule 8(a) and the Plausibility Standard

Under Federal Rule of Civil Procedure 12(b)(6), a
party's complaint survives a motion to dismiss when it
"contain[s] sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) This
standard is met "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." *Id.*
If the factual allegations "raise a right to relief above
the speculative level," a court should not dismiss a
complaint for failure to state a claim. *Twombly*, 550 U.S.
at 555. Federal Rule of Civil Procedure 8(a)(2) requires a

pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 "does not require 'detailed factual allegations'[,] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F. 2d 636, 639 (2d Cir. 1980)). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In deciding a Rule 12(b)(6) motion to dismiss, the court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008)(citation and internal quotation marks omitted); *see also Star v. Song BMG Music Entm't*, 592 F.3d 314, 321 (2d

Cir. 2010). But, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation and internal quotation marks omitted). To assess whether a complaint states a plausible claim for relief, the Supreme Court has suggested a "two-pronged approach." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679.) First, a court should begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The plausibility of an entitlement to relief determination, the second prong in *Hayden*'s "two-pronged approach," is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* A claim is plausible "when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for

13

the misconduct alleged." *Id*. at 678. Plaintiff's
"[f]actual allegations must be enough to raise a right to
relief above the speculative level" when the court rests on
the assumption the complaint's allegations are true. *Id.*
The plausibility standard does demand more than a "sheer
possibility that the defendant had acted unlawfully," but
it does not require a showing of a "probability" of
misconduct. *Id.*

Yet, a well-pleaded complaint may survive a
motion to dismiss even where it "strikes a savvy judge that
actual proof of those facts is improbable, and that a
recovery is very remote and unlikely." *Twombly*, 550 U.S.
at 556 (citation and internal quotation marks omitted).
This is because the court's function is "not to weigh the
evidence that might be presented at trial but merely to
determine whether the complaint itself is legally
sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d
Cir. 1985).

When reviewing a motion to dismiss, "the court
limits its considerations to: (1) the factual allegations
in the complaint; (2) documents attached to the complaint
as exhibits or incorporated in it by reference; (3) matters
of which judicial notice may be taken; and (4) documents
that are 'integral' to the complaint." *Davis v. NYC Dep't*

*of Educ.*, No. 10-CV-3812, 2012 WL 139255, at *3 (E.D.N.Y.

Jan. 18, 2012); *Corbett v. eHome Credit Corp.*, No. 10-CV-

26, 2010 WL 1687704, at *2 (E.D.N.Y. Apr. 27, 2010)); *Brass

v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993);

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.

2002)(noting that "even where a document is not

incorporated by reference, the court may nevertheless

consider it where the complaint 'relies heavily upon its

terms and effect,' which renders the document 'integral' to

the complaint").

## DISCUSSION

### I.  Defendants' Reorganization Plan

As a threshold matter, defendants argue that

plaintiff's age discrimination claim pursuant to the ADEA,

29 U.S.C. §§ 621, was discharged by the issuance of a

Chapter 11 Reorganization Plan in Bankruptcy Court.[6]

(Defs.' Mem. at 2.)  In response, plaintiff argues that due

---

[6] Other courts have granted motions to dismiss due to the *res
judicata* effect of a Bankruptcy Court's Order, which is a final
judgment on the merits. *Cost v. Super Media*, 482, B.R. 857, 862
(2012).  However, in the instant action, the court need not
address a *res judicata* argument, as plaintiff moved under Fed. R.
Civ. P. 12(b)(6), and this court finds that defendants'
Reorganization Plan bars plaintiff's claims against NAA.  *See
Holmes v. Air Line Pilots Ass'n, Int'l,* 745 F. Supp. 2d 176, 195
(E.D.N.Y. 2010); *see also Tadic v. Stolt-Nielsen S.A.*, No. 01-CV-
6814, 2005 WL 946567 at *1 (E.D.N.Y. Apr. 18, 2005) ("[T]he court
finds that the claims are discharged under Section 1141.
Therefore, the Complaint does not state a cause of action for
which relief can be granted and must be dismissed pursuant to
Federal Rule of Civil Procedure 12(b)(6).").

to the defendants' failure to properly notify the plaintiff of their action in Bankruptcy Court and subsequent Reorganization Plan, his instant action should not be deemed discharged and barred.  (Pl.'s Opp. at 12.)

The defendants' Reorganization Plan includes a "Discharge of Claims and Termination of Interests" clause ("Discharge Clause"), providing that "all entities who have held, hold, or may hold claims or interests that have been . . . discharged . . . from and after the effective date, from . . . commencing or continuing in any manner any action or other proceeding or any kind on account of or in connection with or with respect to any such claims or interests . . . ."  (ECF No. 16, Novich Cert., Ex. 5, at Exhibit A, at 42-43 ¶ G.)  This discharge of claims is pursuant to Section 1141(d) of the Bankruptcy Code.  (*Id.*, Ex. 5, at Exhibit A, p. 42 ¶ F.)  Under Section 1141 of the Bankruptcy Code, a bankruptcy court's confirmation of a reorganization plan discharges the debtor from any debt that arose before the date of the confirmation, regardless of whether proof of the debt is filed, the claim is disallowed, or the plan is accepted by the holder of the claim.  11 U.S.C. § 1141(d)(1)(A).  "A 'debt' is defined to mean 'liability on a claim,'" and "a 'claim' is defined to include any 'right to payment, whether or not such right is

reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'" *In re Worldcom, Inc.*, 546 F.3d 211, 216 (2d Cir. 2008) (quoting 11 U.S.C. §§ 105(A)(5) and (12)); *see also Cost v. Super Media*, 482 B.R. 857, 861 (S.D.N.Y. 2012) (same); *Carter v. Safety-Kleen Corp.*, No. 06 CV 12947, 2007 WL 1180581, at *2 (S.D.N.Y. Mar. 14, 2007) (same).

Thus, the Reorganization Plan covers all debts and claims that existed before the effective date of the Reorganization Plan, including employment discrimination claims. *Super Media*, 482 B.R. at 861 (citing *Holmes*, 747 F. Supp. 2d 176, 196 (E.D.N.Y. 2010)); 11 U.S.C. § 1141(d)(1)(A). Accordingly, whether plaintiff's claim is barred due to the defendants' subsequent Reorganization Plan rests on the court's determination of whether the plaintiff's claim arose prior to the February 13, 2013 effective date of defendants' Chapter 11 Reorganization Plan. (Not. of Eff.)

Generally, a claim arises, for the purposes of discharge in bankruptcy cases, at the "time of the events giving rise to the claim, not at the time the plaintiff is first able to file suit on the claim." *Carter*, 2007 WL 1180581, at *4-5 (internal quotation marks and citation

omitted).  Additionally, "the time a claim arises is determined under relevant non-bankruptcy law." *In re Manville Forest Products Corp.*, 209 F.3d 125, 128 (2d Cir. 2000).  Specifically, in employment discrimination cases, a claim is deemed to arise "on the date the employee learns of the employer's discriminatory conduct."  *Super Media*, 482 B.R. at 862 (quoting *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000)); *see also Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) ("Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action.").

Here, plaintiff's claims against defendants arose before the effective date of defendants' Chapter 11 Reorganization Plan in the Bankruptcy Court on February 13, 2013. (Not. of Eff.; Novich Cert., Ex. 2.)  Plaintiff filed his complaint on February 3, 2012, two days prior to defendants' filing for reorganization.  Additionally, plaintiff's complaint alleges defendants engaged in discriminatory conduct towards him on and before August 23, 2011. (Compl. ¶ 38.)  As such, plaintiff's claims occurred prior to the February 13, 2013 effective date.

Accordingly, defendants' Reorganization Plan's Discharge Clause and the injunction provisions set forth in

Sections 1141(d) and 524(a) of the Bankruptcy Code barred,
terminated, discharged and enjoined plaintiff's claims
arising out of the alleged discriminatory conduct of NAA on
or before August 23, 2011.  Plaintiff may not here litigate
claims against NAA because they were discharged through the
confirmation of the Reorganization Plan.  *See* 11 U.S.C. §§
524(a), 1141(d); *see, e.g.*, *Super Media,* 482 B.R. at 861
("Employment discrimination claims that arise before the
effective date of the confirmation of a reorganization plan
under § 1141 are discharged by the effectuation of the
plan."); *Holmes*, 747 F. Supp. 2d at 196 (finding the
defendant's bankruptcy action barred the plaintiff's
employment discrimination claim, as defendant's
reorganization plan under Section 1141 discharged any
employment discrimination claims that arose prior to the
effective date of the reorganization plan and confirmation
order); *Carter*, 2007 WL 1180581, at *1 (defendant's Chapter
11 bankruptcy proceeding and the plain language of Section
1141 of the Bankruptcy Code required the court to discharge
plaintiff's Title VII claim); *Kresmery v. Serv. Am. Corp.*,
227 B.R. 10, 16 (D. Conn. 1998) ("[T]he Court finds that
the defendant's liability for the plaintiff's ADA claim,
which arose postpetition but preconfirmation, was
discharged by the confirmation of the defendant's

reorganization plan under Chapter 11 of the Bankruptcy Code
. . . ."). Therefore, both the plain language of 11 U.S.C.
§ 1141(d) and the defendant's Reorganization Plan require
the dismissal of plaintiff's claims against NAA.

## II.  Plaintiff's Notice of Defendants' Chapter 11 Bankruptcy Proceedings

Plaintiff alleges defendants' Reorganization Plan
should not bar his claims because (1) plaintiff did not
understand that the notice he received of NAA's proceeding
in Bankruptcy Court involved his claims in the instant
action and (2) his attorney does not recall receiving
notice. (Pl.'s Opp. at 13.)  Plaintiff contends that he
should be excused from the Proof of Claim deadline to file
as a creditor in a bankruptcy proceeding.  (*Id.*)

Plaintiff, however, conflates the issues in this
case.  In certain circumstances, a bankruptcy court will
accept the filing of untimely Proof of Claims, but there is
no evidence that plaintiff sought such an extension.  *See
In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005)(noting
that a bankruptcy court may consider "all relevant
circumstances surrounding the party's omission" when
considering whether to permit the untimely filing of a
Proof of Claim); *see also Pioneer Inv. Services Co. v.
Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 381

(1993)).  Moreover, even if defendant provided insufficient

notice of its bankruptcy proceeding to plaintiff, the

Reorganization Plan, Confirmation and Order of an Effective

Date in the defendants' bankruptcy proceeding would bar

plaintiff's claims.  Had the Bankruptcy Court permitted

plaintiff to file an untimely Proof of Claim, this would

only result in the opportunity to file a Proof of Claim in

bankruptcy court, and would not allow plaintiff to proceed

with his action against defendants in district court.  *See*

*Carter*, 2007 WL 1180581, at *15 (holding that because

plaintiff's claims occurred before the defendant's

bankruptcy reorganization plan and were therefore

discharged, plaintiff needed to "pursue his claim before

the Bankruptcy referee or not at all").  Plaintiff cites no

authority for his position that the district court has

authority to override a failure by a creditor to file a

timely claim after the confirmation of a reorganization

plan.[7]

---

7 The Bankruptcy Court retains continuing jurisdiction over its
prior orders.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137,
151 (2009) ("The answer here is easy: as the Second Circuit
recognized, and respondents do not dispute, the Bankruptcy Court
plainly had jurisdiction to interpret and enforce its own prior
orders."); *see also In re Old CarCo LLC*, 09 CIV. 8875 CM, 2010 WL
9461648 at *9 (S.D.N.Y. July 2, 2010) *aff'd, In re Old Carco LLC*,
438 F. App'x 30 (2d Cir. 2011)("[I]t is difficult for this Court
to imagine how the Bankruptcy Court's interpretation of its own
prior orders, both of which were integral to, and issued in due
course of, a chapter 11 proceeding, could be interpreted ex post

Moreover, even if plaintiff could properly seek an extension of time to file a claim in the district court, which he cannot, plaintiff fails to rebut the "presumption of receipt." *In re AMR Corp.*, 492 B.R. 660, 664 (Bankr. S.D.N.Y. 2013). "[F]ederal courts in New York . . . hold quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt [of notice] created by proof of mailing." *In re Malandra*, 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997). While it is possible to rebut the presumption of receipt, a party must allege more than "mere denials" of receipt of notice, and allege insufficient notice "in combination with evidence of standardized procedures for processing mail." *In re Robinson*, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998). Here, plaintiff does not provide an affidavit of non-receipt or even a "mere denial" of sufficient notice. Instead, plaintiff asserts that he "did not understand any notice that was sent to him," and that his attorney "has no recollection of any notice . . . sent to his office." (Pl.'s Opp. at 13.) These assertions fall far short of an affidavit supported by sufficient evidence that neither the

---

facto as anything other than related to the Bankruptcy itself.").

plaintiff nor his attorney received any notice.[8]  As such,

plaintiff does not sufficiently establish how defendant NAA

failed to adequately provide him with notice of its

bankruptcy court proceeding, and his claims against NAA

must be dismissed.

**III.  Plaintiff's Claims against Individual Defendants**

In addition to the discharge of plaintiff's

claims against NAA, plaintiff's claims against defendants

Martin Wax, Lorraine Dimarco, and Eric Chang are barred.

The defendant's Reorganization Plan enjoins the plaintiff

from continuing his action against any "released parties,"

which includes employees of NAA. (Novich Cert., Ex. 5 at

Exhibit A, p. 11, ¶ 135, p. 42, ¶ G).

Plaintiff's claims against the individual

defendants are also barred under the ADEA.  The ADEA makes

it unlawful for "an employer . . .  to fail or refuse to

hire or to discharge any individual or otherwise

discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of

employment, because of such individual's age."  29 U.S.C. §

---

[8] The court notes that defendants have provided proof of service
on plaintiff's attorney of the "Notice of Chapter 11 Bankruptcy
Case" (Novich Cert., Ex. 3).  In addition, defendant NAA provided
notice in the New York Times by publication on October 23, 2012,
notifying the public of a hearing to consider defendants'
Reorganization Plan.  (Bankr. Docket No. 12-40783, ECF. No. 692,
Not. of Pub.)

623(a)(1)(1994). An employer is "a person engaged in an industry affecting commerce who has twenty or more employees for each working day . . . [and] any agent of such a person." *Id.* § 630(b). The mention of "agent" in the ADEA "was merely intended to create respondeat superior liability against employers for the acts of their agents." *Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 462 (N.D.N.Y. 2013)(quoting *Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986, 990 (E.D.N.Y. 1995)). Courts have held that under the ADEA, an employer is the proper party defendant. *Leykis* 899 F. Supp. at 990 ("employers are liable for the actions and policies of their employees"). The ADEA does not confer liability on agents and they cannot be "independently and individually liable for [the employer's] discriminatory actions and policies." *Id.* Accordingly, given that plaintiff's claims against NAA are discharged by the effectuation of the Reorganization Plan, plaintiff cannot sue Martin Wax, Lorraine DiMarco, or Eric Chang in their individual capacities under the ADEA. Therefore, plaintiff's claims against the individual defendants are likewise dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion

to dismiss is granted in its entirety.  Plaintiff's

Complaint is dismissed with prejudice.  The Clerk of Court

is respectfully requested to enter judgment accordingly and

to close this case.


**SO  ORDERED.**


Dated: March 26, 2014
       Brooklyn, New York


                          _____/s/_____
                          **KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York